**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| SCOTT D. SALMON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ACRES LAND TITLE AGENCY, INC., ABSOLUTE ESCROW SETTLEMENT, CO., INC., PETER A. UZZOLINO,<br><br>*Defendants*. | No. 24-cv-09305 (MEF)(LDW)<br><br>**OPINION and ORDER** |

\* \* \*

For the purposes of this brief Opinion and Order, the Court assumes familiarity with the allegations and procedural history of this case.

\* \* \*

A homeowner[1] sued his title company[2] and its affiliate,[3] mainly for allegedly charging improper fees.

From here, the homeowner is called "the Plaintiff," and the title company and its affiliate are together called "the Defendants."

Per the Plaintiff, the Defendants' improper charges violated Section 8(b) of the federal Real Estate Settlement Procedures

---

[1] Scott D. Salmon.

[2] Acres Land Title Agency, Inc.

[3] Absolute Escrow Settlement Co., Inc.

Act ("RESPA"), codified at 12 U.S.C. § 2607(b), see Complaint (ECF 3) ¶¶ 70-75, plus two state laws.[4]  See id. ¶¶ 57-69.

The Defendants now move to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6).  See Motion to Dismiss (ECF 11-1) at 1-3.

This Opinion and Order takes up only the Section 2607(b) RESPA claim as it runs against the Defendants.

As to that claim, the motion to dismiss is granted.

\*   \*   \*

To make out a Section 2607(b) claim, a plaintiff must allege that there has been a "portion, split, or percentage of any charge" imposed on the homebuyer (like the Plaintiff here) by a service provider (like the title insurance-Defendant here), "other than for services actually performed."  12 U.S.C. § 2607(b).

That means the "charge" in question must have been "divided between two or more persons."  Freeman v. Quicken Loans, Inc., 566 U.S. 624, 638 (2012); see also Tubbs v. N. Am. Title Agency, Inc., 531 F. App'x 262, 266 (3d Cir. 2013); Santiago v. GMAC Mortg. Grp., Inc., 417 F.3d 384, 388-89 (3d Cir. 2005); accord, e.g., Krzalic v. Republic Title Co., 314 F.3d 875, 879 (7th Cir. 2002); Haug v. Bank of Am., N.A., 317 F.3d 832, 836 (8th Cir. 2003); Boulware v. Crossland Mortg. Corp., 291 F.3d 261, 266 (4th Cir. 2002); Mercado v. Calumet Fed. Sav. & Loan Ass'n, 763 F.2d 269, 270 (7th Cir. 1985).

There are two main ways in which a charge can be illegally divvied up.

One is through a kickback.  The other is through a markup.  See Santiago, 417 F.3d at 388-89.

To see the difference, take an example.

Say that a title company offers escrow services to its customer.  The title company buys the escrow services from an escrow company for $100.  And it then charges its customer $120 for the escrow services.

---

[4]  One of the state laws is a statute.  See Complaint ¶¶ 57-63.  The other is state common law.  See id. ¶¶ 64-69.

2

In a kickback, the title company passes the $120 it got from its customer for the escrow services to the escrow company. From there, the escrow company turns around and pays the title company $20. See id. at 388-89.

In a markup, the title company passes on to the escrow company only $100 of the $120 it got from its customer for the escrow services. The title company keeps the $20 for itself. See id. at 389.

The difference in a nutshell: a markup is in one step, and the third-party service provider never puts hands on the title company's profit; a kickback is in two steps, and the third-party service provider briefly holds on to the title company's profits, before remitting it (kicking it back) to the title company.

\*   \*   \*

Whether the allegedly improper payment here is framed as a kickback or a markup, the Plaintiff's allegations do not make the cut.

This is because there are no meaningful allegations in the Complaint that the charges were "divided between two or more persons." Freeman, 566 U.S. at 638.

To see the point, move through the five main relevant allegations in the Complaint.

\*   \*   \*

First, the Complaint alleges that there have been "improper kick-backs." Complaint ¶ 6; see id. ¶ 7. And it says the Defendants were "illegally marking up" certain costs. Id. ¶ 6.

But these are bottom-line legal conclusions. Not the factual allegations that legal conclusions must rest on.

And when it comes to seeing if there is enough to survive a Rule 12(b)(6) motion, the bare assertion of a legal conclusion does not count. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007); Connelly v. Lane Constr. Corp., 809 F.3d 780, 789-90 (3d Cir. 2016); see

3

also Oppenheimer v. Trs. of Stevens Inst. of Tech., 679 F. Supp. 3d 48, 50 (D.N.J. 2023).[5]

\* \* \*

Second, the Complaint alleges that the title company-Defendant "consistently charges its customers for Secondary Mortgage Market Endorsements, [although] such endorsements are rarely required by . . . lenders/investors."  Complaint ¶ 36.

But this is not an allegation of a "split," and that is what Section 2607(b) prohibits.

There is no explicit reference in the above to a second entity, to which the title company-Defendant might be giving a "portion," 12 U.S.C. § 2607(b), of the fees it charges its customers.

And the above allegation does not plausibly imply a "split."

The allegation is essentially that the title company-Defendant is always ("consistently") charging customers for something "rarely" needed.

But standing alone, that does not suggest that an improper "split" is happening.

A mechanic may charge all of his customers for an oil change, no matter what they come in for and even though oil changes are "rarely" necessary.  This may be improper.  And it may even be illegal.  But it does not suggest that the mechanic is giving someone else a cut of the added money he is pocketing from the unnecessary oil changes.

\* \* \*

Third, the Complaint alleges that the title company-Defendant "wrongfully bills its customers 'Transaction Management Fees.'" Complaint ¶ 27.

And the Complaint adds that those are fees for services provided by software vendors, "to process and post title, settlement and

---

[5] "And legal conclusions done up as factual allegations" do not fare any better; they too "must be put aside."  Badalamenti v. Resideo Techs., Inc., 755 F. Supp. 3d 534, 547 n.16 (D.N.J. 2024) (cleaned up); cf. Webb v. Hillside Mun. Police Dep't, 2025 WL 1899560, at *5 (D.N.J. July 8, 2025).

4

related documents on the internet." Id. ¶ 28. Entities like the title company-Defendant, the Complaint alleges, do not typically charge those fees. See id. ¶ 28. But, it is alleged, software vendors do. See id.

The upshot: the title company-Defendant allegedly charged its customers for a service ("Transaction Management Fees") performed by someone else (a software vendor).

But that does not change the picture.

There is no liability under Section 2607(b) for simply "[c]ompensating a third party for services actually performed." Boulware, 291 F.3d at 265; see Clements v. LSI Title Agency, Inc., 779 F.3d 1269, 1275 (11th Cir. 2015); Arthur v. Ticor Title Ins. Co. of Fla., 569 F.3d 154, 157 (4th Cir. 2009); Haug, 317 F.3d at 836.

A title insurance company can, for example, charge a homebuyer $100 for $100 worth of "services actually performed" by, say, an escrow company. 12 U.S.C. § 2607(b).

But it is not lawful for the title insurance company to charge $120 for $100 of escrow services, and take for itself $20 (because the $20 would be for services the title company did not "actually perform[]"). See Santiago, 417 F.3d at 388-89.

The Complaint here alleges only that a third-party vendor, a software provider, was in the mix.

But standing alone, a vendor's involvement does not plausibly suggest anything one way or another as to whether the vendor's services were billed for (a) "services actually performed" (fine under Section 2607(b)) or (b) something more than that (not allowed under Section 2607(b)).

The involvement of a vendor (or any other entity) opens up the possibility of a "split" and a Section 2607(b) violation. But it says nothing about whether the possibility materialized in a given case.

To put the point in a different way:

By definition, a split requires at least two companies --- one to get a portion of the money, and one to get the other. But the mere presence of two companies on a closing does not plausibly suggest anything as to whether a split has in fact taken place.

5

\* \* \*

<u>Fourth</u>, the Complaint alleges that the affiliate-Defendant and the title company-Defendant each charged the Plaintiff a "Title Examination Fee."  <u>See</u> Complaint ¶ 34.

But same problem.

There are no allegations that one of these Defendants was not "actually perform[ing]," 12 U.S.C. § 2607(b), the "[t]itle [e]xamination" service.

Rather, there is simply the allegation that the two defendants billed for "[t]itle [e]xamination."

And by itself, that says little as to whether there was a mark-up or a kickback.  Each entity may simply have been doing a different part of the task and billing separately for it.  That is not enough.  <u>See</u> <u>Smith & Wesson Brands, Inc.</u> v. <u>Estados Unidos Mexicanos</u>, 145 S. Ct. 1556, 1565 (2025) ("'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'") (quoting <u>Iqbal</u>, 556 U.S. at 678); <u>Twombly</u>, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

\* \* \*

<u>Fifth</u>, and finally:

The Complaint alleges that the title company-Defendant "charged [the] Plaintiff $30 for [an] 'Overnight Fee[,]' which was paid to [the affiliate-Defendant]."  <u>Id</u>. ¶ 30.

But again, same problem.

The quoted allegation provides no plausible reason to think that unlawful splitting was taking place.  After all, the allegation is consistent with a pure pass-through of costs for work "actually performed."  <u>Boulware</u>, 291 F.3d at 265.  And that is lawful under Section 2607(b).  <u>See</u>, <u>e.g.</u>, <u>id</u>.

As to the "Overnight Fee," the Complaint also alleges:

> The overnight delivery of a title commitment to an attorney's office is totally unnecessary in today's era of emails and cheaper commercial overnight delivery services.  This is an unnecessary sham cost

6

> which [the title company-Defendant] imposed
> upon . . . [the] Plaintiff.

Id. ¶ 31.

But companies are not liable under Section 2607(b) because a service is too pricey or even unnecessary; companies are liable when a fee has been "divided" in some way. Freeman, 566 U.S. at 638; see Tubbs, 531 F. App'x at 266 n.3 (an "unearned, undivided fee . . . does not violate [Section 2607(b)] because it does not involve a fee split with another"); Krzalic, 314 F.3d at 881 (RESPA "is not a price-control statute"); Echeverria v. Chi. Title & Tr. Co., 256 F.3d 623, 626 (7th Cir. 2001) (a windfall that benefits only one party is not a violation of Section 2607(b)).

Charging a too-expensive fee can sometimes be a way to make room for a kickback.[6]

But charging a too-expensive fee does not establish, even to the low standard of plausibility, that there has been a kickback.

That a fee was allegedly too high does not imply that it was split with someone else. Only that it was too high. This is common sense. See generally Iqbal, 556 U.S. at 678-79 (on a motion to dismiss, a court can "draw on its experience and common sense" to decide whether a complaint is "plausible on its face").[7]

---

[6] If a service costs $10 and a company aims to make a $2 profit, it might ordinarily charge $12. But if the company also needs to pay someone a $1 kickback, the company might charge $13 --- to make room for the kickback without eating into its profits. Because of this dynamic, higher prices can sometimes be a surface indication of a kickback. They can be a tell for investigators. And sometimes they can be admitted as kickback evidence at trial. But treating higher prices, without much else, as plausibly indicating a kickback would turn RESPA into what it is not: "a price-control statute." Krzalic, 314 F.3d at 881.

[7] And all of this is to assume arguendo that the alleged $30 fee was indeed too high. The Complaint suggests it was, in part, because there are "cheaper commercial overnight delivery services." Complaint ¶ 31. But by invoking a particular baseline ("commercial overnight delivery services"), and asking the Court to notice it, the Plaintiffs may possibly open the

7

\*   \*   \*

Bottom line: the motion to dismiss as to the Section 2607(b) claim is granted.[8]

\*   \*   \*

A loose end.

The Plaintiffs have also pressed state law claims, see Complaint ¶¶ 57-69, and the Defendants have moved to dismiss those.

The Plaintiffs shall indicate in a brief letter, to be filed on or before August 6 at noon, whether they will seek to amend their Complaint by (a) adding a new federal claim and/or (b) fleshing out their now-dismissed Section 2607(b) claim.

If yes, they shall file their amended pleading on or before September 3.[9]

---

door to the Defendants making an argument as to whether $30 for an overnight fee is or is not out of line with normal "overnight delivery costs" (plus the inevitable costs of getting any work done quickly). Cf. Dep't of Com. v. New York, 588 U.S. 752, 785 (2019) ("Our review is deferential, but we are not required to exhibit a naiveté from which ordinary citizens are free.") (cleaned up).

[8] At one point, the Plaintiffs allege that his invoice "reveals that apparent markups were made to various pass-through costs." Complaint ¶ 25. Given the other allegations here, of prices that are simply too high, the Court takes the Plaintiff to be alleging that a price looked too high to him --- and based on that, it was "apparent" to the Plaintiff that there had been a mark-up. But as noted, higher prices do not by themselves suggest a "split." Things might be different if the markup was allegedly "apparent" because it was listed out on the invoice. But even giving all reasonable inferences to the Plaintiff, see generally Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008), that reading is not true to the part of the Complaint quoted in this footnote.

[9] The disposition here of the motion to dismiss did not require consideration of any limitations period/equitable tolling issue. See Motion to Dismiss at 12-14 (raising this issue). If an amended complaint is filed, the Court may take up the issue as may be appropriate.

8

If no, the parties should be prepared to promptly file letter briefs of no more than two single-paced pages on or before September 5 at noon, focused on two things.

First, on whether this Court should retain jurisdiction over the state law claims. See 28 U.S.C. 1367(c).

And second, on why the Court should not dismiss the Section 2607(b) claim, see ECF 12, against the owner of the Defendants. See Complaint ¶ 14. The claims against the owner seem to rest on the same footing (or weaker footing) than the now-dismissed Section 2607(b) claim that ran against the Defendants.

\*   \*   \*

IT IS on this 30th day of July, 2025, so **ORDERED**.

_____
Michael E. Farbiarz, U.S.D.J.