**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SCOTT D. SALMON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ACRES LAND TITLE AGENCY, INC., ABSOLUTE ESCROW SETTLEMENT, CO, INC., PETER A. UZZOLINO,<br><br>*Defendants*. | No. 24-cv-9305 (MEF)(LDW)<br><br>**OPINION and ORDER** |

* * *

For purposes of this brief Opinion and Order, the Court assumes virtually full familiarity with the facts and procedural history of this case.

* * *

The Plaintiff[1] is a homeowner. He is suing a title insurance company, an affiliate, and the companies' owner (together, "the Defendants"). See First Amended Class Action Complaint ("Complaint") (ECF 28) ¶¶ 10-13.

The gist of the lawsuit: the Plaintiff was charged illegal fees in connection with his mortgage closing. See Salmon v. Acres Land Title Agency, Inc., 2025 WL 2163873, at *1 (D.N.J. July 30, 2025); see also Complaint ¶¶ 24-46.

The Plaintiff's filed his initial complaint in September 2024. See Class Action Lawsuit (ECF 1). It pressed two state-law claims. See id. ¶¶ 57-69. Plus a federal claim under the Real Estate Settlement Procedures Act ("RESPA"). See id. ¶¶ 70-75.

---

1 Scott D. Salmon.

Earlier, the Court dismissed the Plaintiff's federal claim on the merits. See Salmon, 2025 WL 2163873, at *2-5.

The Plaintiff then filed an amended complaint, and the Defendants have now, again, moved to dismiss. See Notice of Motion of Defendants Acres Land Title Agency, Inc. and A-Absolute Escrow Settlement Co., Inc. to Dismiss Plaintiff's First Amended Complaint (ECF 31); Notice of Motion to Dismiss Plaintiff's First Amended Complaint (ECF 32).

Among other things, they argue that the Plaintiff's current RESPA claim is time-barred. See Memorandum of Law in Support of Defendants Acres Land Title Agency, Inc and A-Absolute Escrow Settlement Co. Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint ("Corporate Defendants' Brief") (ECF 31-3) at 13-16; Memorandum of Law in Support of Peter Uzzolino's Motion to Dismiss Plaintiff's First Amended Complaint ("Uzzolino's Brief") (ECF 32-1) at 25 n.2.

The Court agrees, and this Opinion and Order explains why.

* * *

The Plaintiff's RESPA claim is brought under Section 8(b),[2] see Complaint ¶¶ 77-82, which is subject to a one-year limitations period that runs "from the date of the occurrence of the violation." 12 U.S.C. § 2614.

The parties essentially agree that "the occurrence of the [alleged] violation[s]," id., is no later than the closing date for the Plaintiff's home purchase --- which took place on April 29, 2022.[3] See Corporate Defendants' Motion at 13; Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss the First

---

[2] Codified at 12 U.S.C. § 2607(b).

[3] The current complaint briefly alludes to the continuing violations doctrine, and suggests that on account of this doctrine, "[c]lass members' claims did not accrue until exposure of the Defendants' illegal conduct via this lawsuit." Complaint ¶ 62. Under the continuing violations doctrine, the statute of limitations sometimes runs from the date of the last alleged violation, rather than the first. See Cowell v. Palmer Twp., 263 F.3d 286, 291-93 (3d Cir. 2001). But here it is not disputed that the last day on which the Defendants could have violated RESPA was the date of the Plaintiff's closing. So the continuing violations doctrine does not impact the Court's analysis.

Amended Complaint ("Plaintiff's Brief") (ECF 35) at 26-28 (arguing only that the Plaintiff's RESPA claim is not time barred "because it should be equitably tolled"); see also Complaint ¶ 24.

And because the initial complaint in this case was not filed until September 2024, the RESPA claim looks to be time-barred. See Class Action Lawsuit at 15; 12 U.S.C. § 2614.

But the Plaintiff argues that his claim should nevertheless be allowed to go forward, under the doctrine of fraudulent concealment.[4] See Plaintiff's Brief at 26.

* * *

The doctrine of fraudulent concealment "operates to stop the statute of limitations from running . . . when the accrual date of a claim has passed but the 'plaintiff's cause of action has been obscured by the defendant's conduct.'" In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig., 795 F.3d 380, 401 (3d Cir. 2015) (quoting In re Linerboard Antitrust Litig., 305 F.3d 145, 160 (3d Cir. 2002)).

It is "a rare" and "'extraordinary remedy.'" Aversano v. Santander Bank, N.A., 828 F. App'x 109, 112 (3d Cir. 2020) (quoting Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005)).

"The plaintiff has the burden of proving fraudulent concealment." In re Cmty. Bank, 795 F.3d at 401. Carrying that burden requires the plaintiff to show that (1) "the defendant actively misled the plaintiff"; (2) that this "prevented the plaintiff from recognizing the validity of her claim within the

[4] The "equitable tolling" part of the current complaint invokes the discovery rule, in addition to the doctrine of fraudulent concealment. See Complaint ¶¶ 60-63 (arguing that "Class members did not discover and could not have discovered, through the exercise of due diligence, Defendants' violations of RESPA"). But the time when the alleged injury was discovered does not matter here, because when it comes to RESPA "Congress specifically provided that the limitations period begins to run on 'the date of the occurrence of the violation.'" Cunningham v. M&T Bank Corp., 814 F.3d 156, 162 (3d Cir. 2016) (quoting 12 U.S.C. § 2614); see also id. at 163 ("It is . . . irrelevant for purposes of the statute of limitations in RESPA when a reasonable plaintiff would have discovered her claim.").

limitations period"; and (3) that "the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts." Cunningham v. M&T Bank Corp., 814 F.3d 156, 163 (3d Cir. 2016) (internal quotation marks omitted) (quoting Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006)).

"Allegations of fraudulent concealment must meet the requirements of Federal Rule of Civil Procedure 9(b)." Gunn v. First Am. Fin. Corp., 549 F. App'x 79, 82 & n.1 (3d Cir. 2013). That is, they must be plead "with particularity." Id. at 82 n.1 (citing Byrnes v. DeBolt Transfer, Inc., 741 F.2d 620, 626 (3d Cir. 1984)). A plaintiff "'allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [the] fraud allegation.'" Id. (quoting Federico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)).

* * *

Here, the Plaintiff has not carried his burden.

The Plaintiff has not adequately alleged that the Defendants "actively misled" him. In re Cmty. Bank, 795 F.3d at 401 (cleaned up).

Per the Third Circuit, "[a]ctive [m]isleading" requires a showing "that the defendant took affirmative steps to mislead the plaintiff with respect to the claim." Id. (internal quotation marks omitted). And this generally requires some act on the part of the defendants that is "distinct from the underlying wrong." White v. PNC Fin. Servs. Grp., Inc., 2013 WL 3090823, at *3 (E.D. Pa. June 20, 2013); see also Gutierrez v. TD Bank, 2012 WL 272807, at *9 (D.N.J. Jan. 27, 2012).

But in this case, there is nothing meaningful along those lines.

The current complaint focuses on allegations that the Defendants "mark[ed] up" certain costs when it charged the Plaintiff fees in connection with his home closing. Complaint ¶ 20. Specifically, the Plaintiff alleges that the "invoice" he received from the Defendants "reveals that apparent markups were made" regarding charges for "Tax and Assessment Searches," a "Flood Hazard Certificate," a "Tidelands Search," and a "Settlement Fee." Id. ¶¶ 25, 36-37. As to each, the Plaintiff alleges that the fees were "marked up" and "divided" between the Defendants and "third party vendors," and that the "marked up"

portion of the fees "do not represent services actually performed." Id. ¶¶ 20-21, 25-26, 36-37.

But these allegations speak to the alleged RESPA violations themselves --- not any affirmative acts on the part of the Defendants that were intended to "mislead"[5] the Plaintiff into thinking that the charges he was presented with had no baked-in markups. Cf. 12 U.S.C. § 2607(b) (prohibiting kickbacks or markups for services that were not "actually performed"); Salmon, 2025 WL 2163873, at *1.[6]

The closest the Plaintiff gets to alleging "[m]isleading," In re Cmty. Bank, 795 F.3d at 401, is this:

- "[C]ustomers are almost invariably unaware of the inherently deceptive markups and fees." Complaint ¶ 23 (emphasis added).
- "Uzzolino established the illicit billing scheme for Acres Title and A-Absolute and he concealed it from their customers, including [the] Plaintiff, via inherently deceptive practices." Id. ¶ 45 (emphasis added).
- "[The] Defendants did not disclose, and actively concealed, their unlawful billing and referral practices." Id. ¶ 60.

But conclusory allegations like these are not enough.

The Plaintiff, for example, alleges that the Defendants "actively concealed" the markups from him. Id. But that is just a restatement of one of the elements of the legal standard for fraudulent concealment. In a notice pleading regime, it might be enough to spotlight an element, to provide a heads-up

[5] In re Cmty. Bank, 795 F.3d at 401.

[6] Compare also, e.g., Conover v. Patriot Land Transfer, LLC, 2019 WL 397978, at *3 (D.N.J. Jan. 31, 2019) (concluding that the plaintiff stated a claim for fraudulent concealment in part because the "Plaintiffs [did] not allege mere non-disclosure of the 'kickback agreement'"); Marple v. Countrywide Fin. Corp., 2008 WL 9418768 (D.N.J. May 7, 2008) ("Contrary to Defendants' characterization of Plaintiff's claims, Plaintiff does not allege mere non-disclosure of the markups. Rather, Plaintiff alleges that Defendants 'falsely stated on the [relevant forms] that 100% of all of the Fees collected went to [only one party]. This allegation constitutes an 'affirmative independent act of concealment,' and, thus, sufficiently states a claim.") (cleaned up).

as to it. But not in our current pleading regime --- which requires factual allegations as to how each element has been satisfied. See Spencer Savs. Bank, S.L.A. v. BNK Inv., Inc., 2026 WL 867970, at *3 (D.N.J. Mar. 30, 2026); Webway 360, Inc. v. Xerox Corp., 2025 WL 3161999, at *7 (D.N.J. Nov. 12, 2025); Badalamenti v. Resideo Techs., Inc., 807 F. Supp. 3d 414, 419 n.10 (D.N.J. 2025) (collecting cases).

And the problem is more pointed than that.

As noted above, "[a]llegations of fraudulent concealment must meet the requirements of Federal Rule of Civil Procedure 9(b)." Gunn, 549 F. App'x at 82 n.1.

So to survive a motion to dismiss, a plaintiff "must plead fraudulent concealment with particularity" and "'allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [the] fraud allegation.'" Id. (quoting Federico, 507 F.3d at 200).

The bullet-point allegations above do not try to clear this bar. They only assert that the Defendants engaged in an "inherently deceptive" "scheme" to "conceal" markups from customers. Complaint ¶¶ 23, 45, 60.

In a run-of-the-mill case, this would be too conclusory to check the box.

And it cannot go the extra mile that it must under Rule 9(b), and shed light on the "who, what, when, where, and how" of the alleged fraud that the Rule requires. Cf. Jazz Pharms. Rsch. UK Ltd. v. Teva Pharms., Inc., 711 F. Supp.3d 244, 249 (D.N.J. 2024) (citing Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1327 (Fed. Cir. 2009)); cf. also Smith v. Gen. Motors LLC, 988 F.3d 873, 883 (6th Cir. 2021) (noting "that a 'conclusory allegation that [a] process is 'inherently deceptive' is not enough to survive" dismissal) (quoting MacDermid v. Discover Fin. Servs., 488 F.3d 721, 732 (6th Cir. 2007)).[7]

---

[7] Two things here. First, numerous allegations in the complaint belie the suggestion that the alleged markups were affirmatively "concealed . . . from [the Defendants'] customers." Complaint ¶ 45. At paragraph 25, for example, the Plaintiff alleges that the "invoice . . . reveals that apparent markups were made." Id. ¶ 25 (emphasis added). Second, two Defendants have attached to their briefing what they say is the "invoice" referenced in the complaint. See Certification of Kristofor T. Henning in

* * *

In a nutshell: to meet the first prong of the fraudulent concealment test, the Plaintiff bears the burden of pleading "[a]ctive [m]isleading." In re Cmty. Bank, 795 F.3d at 401. But here, those allegations are too conclusory --- let alone to meet the higher Rule 9(b) standard.

* * *

Against this conclusion, the Plaintiff points to In re Community Bank of Northern Virginia Mortgage Lending Practices Litigation, 795 F.3d 380 (3d Cir. 2015), for the idea that an exception

---

Support of Motion of Defendants Acres Land Title Agency, Inc. and A-Absolute Escrow Settlement Co., Inc. to Dismiss Plaintiff's First Amended Complaint ("Henning Certification") (ECF 31-1) ¶ 2; Exhibit 1 to Henning Certification (ECF 32-2). And the Plaintiff has attached a document entitled "Loan Disbursement Instructions." See Loan Disbursement Instructions (ECF 35-1). The Court declines to consider these materials. On a motion to dismiss courts "can consider a document integral to or explicitly relied upon in the complaint." Oatway v. Am. Int'l Grp., Inc., 325 F.3d 184, 185 n.1 (3d Cir. 2003) (cleaned up). But here, the Court cannot be certain that these are in fact the documents that the Plaintiff appears to be referring to in the complaint. Cf. Complaint ¶¶ 25, 42. Moreover, even if the Court were to consider the documents, that would likely not change the picture. The fact that (i) the Loan Disbursement Instructions, and (ii) the invoice reflect different charges for the same services would probably establish, if anything, that the Plaintiff had "'reason to awaken inquiry and direct diligence'" into whether or not they were being unfairly or unlawfully charged for those services. In re Cmty. Bank, 795 F.3d at 404 (quoting Sheet Metal Workers, Local 19 v. 2300 Grp., Inc., 949 F.3d 1274, 1282 (3d Cir. 1991)). And where warning lights like these are flashing, plaintiffs cannot generally fall back on the idea that "borrower[s] [in general] ought to be able to rely on the documents provided by [their] financial institutions," to satisfy the second and third elements of fraudulent concealment. See id. at 404; see also Cunningham, 814 F.3d at 161 (stating that fraudulent concealment requires plaintiffs to show that the defendants' conduct "prevented the plaintiff from recognizing the validity of her claim within the limitations period," and that "the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts").

exists to the "[a]ctive [m]isleading"[8] requirement where a defendant's conduct is "inherently deceptive." See Plaintiff's Brief at 26-28.

Community Bank involved people who received loans that were allegedly tainted by RESPA violations. In re Cmty. Bank, 795 F.3d at 385-86, 390. The district court certified a class, and the loan-holders appealed --- arguing in relevant part that Rule 23's requirements could not be satisfied because whether a limitations period should be tolled (and thus, whether any given plaintiffs' claims were timely) was "not [an issue] susceptible to common proof." Id. at 400.

In conducting its analysis as to the first element of fraudulent concealment --- "[a]ctive [m]isleading," id. at 401 --- the Third Circuit suggested[9] that "misrepresent[ing] material facts in . . . HUD-1 settlement statements" and "providing a HUD-1 that contained false representations as to the destination of the settlement fees" could qualify as acts of fraudulent concealment sufficient to toll a RESPA claim. Id. at 402-03.

Per the Circuit, "[a] HUD-1 is a standard real estate settlement form that the Real Estate Settlement Procedures Act requires in connection with all mortgage loans that are covered by federal law." Id. at 386 n.1 (citing 12 U.S.C. § 2603).

And because this statement is required by federal law, there are also federal regulations that govern the information that is supposed to be included in them. See id. at 403. Per one regulation:

> "The settlement agent shall state the actual charges paid by the borrower and seller on the HUD-1. . . . The settlement agent must separately itemize each third party charge paid by the borrower and seller. All origination services performed by or on behalf of the loan originator must be included in the loan originator's own charge. Administrative and processing services related to title services must be included in the title underwriter's or title agent's own charge. The amount stated on the HUD-1 . . . for any itemized service cannot exceed the amount actually received by the settlement service

[8] In re Cmty. Bank, 795 F.3d at 401.

[9] See footnote 10 for a key qualifier.

> provider for that itemized service, unless the charge is an average charge in accordance with paragraph (b)(2) of this section."

Id. (quoting 24 C.F.R. § 3500.8) (emphases added).

In light of these regulations, the court of appeals concluded that "HUD-1s that deviate from the[se] requirements . . . can be materially misleading." Id. "[T]ransmission of a HUD-1 impliedly warrants compliance with [the regulation's] specific requirements," and "borrowers should be able to rely on that information" when reading the HUD-1s they are presented with. Id.

But Community Bank has no bearing here.[10]

The Plaintiff contends that the "invoice," Complaint ¶ 25, he received from one of the Defendants was inherently misleading because it reflected "marked-up . . . charges." Id.

The charges reflected on the invoice might turn out to be unlawful under state or federal law. See id. ¶¶ 64-70, 77-82 (so claiming). But this does not necessarily mean that the invoice presented to the Plaintiff was "[a]ctive[ly] [m]isleading." In re Cmty. Bank, 795 F.3d at 401.

To be sure, Community Bank implied that background regulations might be able to invest a document with a kind of special status --- such that the document "impliedly warrants compliance" with relevant regulations. Id. at 403. And if it does not comply with the regulations, then handing over that document might count as active concealment. See id.

But that does not mean that misstatements in any document amounts to active concealment. And the Plaintiff here has not pointed to any particular regulations or laws that dictated what must be reflected on the face of an invoice.[11] Contra id. at

---

[10] Even assuming arguendo, as the discussion here does throughout, that Community Bank speaks to the substance of what it takes to make out fraudulent concealment --- and not just to how it plays out in the Rule 23 context. See Cunningham, 814 F.3d at 163.

[11] The Plaintiff has cited two regulations and one state statutory provision in support of his allegations that the Defendants charges violated New Jersey's Title Insurance Act. See Complaint ¶¶ 14, 16-18. But these do not dictate the

402-03. Nor has the Plaintiff alleged that the Defendants represented[12] that the invoice and/or final payment schedule would not reflect any markups or extra service fees. Contra id. at 402. To the contrary, the Plaintiff alleges that "[t]he invoice [he received] reveals that apparent markups were made." Complaint § 25 (emphasis added).

Community Bank is simply not on point.[13]

* * *

For the reasons set out above, the Defendants' motions to dismiss at ECF 31 and ECF 32 are granted as to the Plaintiff's RESPA claim. That claim comes too late. It is time-barred.

* * *

As to next steps, the Plaintiff shall file a very brief letter indicating whether he intends to seek leave to file an amended complaint. The letter must be filed on or before August 5 at noon.

If he wishes to file another amended complaint, a briefing schedule will be set.

If he does not wish to file another amended complaint, the Court will convene a brief conference as to how to proceed on the

---

content of title agency invoices --- nor has the Plaintiff argued that they do. N.J. Stat. Ann. § 17:46B-42(d) states only that "no title insurance company or agent of a title insurance company shall charge any fee for any policy or contract of title insurance except in accordance with filings or rates which are in effect for said title insurance company as provided in this act." Id. (emphasis added). And N.J. Admin. Code § 11:17B-3.2 similarly sets forth restrictions on what "[a]n insurance producer may charge a[s] fee[s] for [certain] services." Id. N.J. Admin. Code § 11:17B-3.1 states that "[a]ny insurance producer charging a fee to an insured or prospective insured shall first obtain from the insured or prospective insured a written agreement, which . . . shall contain [a list of enumerated] provisions and no other provisions." Id § 11:17B-3.1(b) (emphasis added). But there is no reason to think that the allegedly fraudulent "invoice" here, Complaint ¶ 25, was the required "written agreement." N.J. Admin. Code § 11:17B-3.1(b).

[12] On paper or elsewhere.

[13] Recall footnote 10.

remaining state-law claims. It is not clear at this point that there would be diversity jurisdiction over those claims. Cf., e.g., 28 U.S.C. § 1332(d)(4)(B). Or supplemental jurisdiction, either. See Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000) (noting that "'where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so'") (emphasis in original) (quoting Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995)).

* * *

IT IS on this 28th day of July, 2026, **SO ORDERED.**

Michael E. Farbiarz, U.S.D.J.